IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELLACONIC IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 22-244-CFC |
| | ) | |
| TIMECLOCK PLUS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| MELLACONIC IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 22-541-CFC |
| | ) | |
| DEPUTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Andrew S. Curfman, Howard Wernow, SAND, SEBOLT & WERNOW CO., LPA, Canton, Ohio

*Counsel for Plaintiff Mellaconic IP LLC*

**MEMORANDUM OPINION**

May 3, 2023
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
CHIEF JUDGE

Pending before me in these actions is "Plaintiff's Motion to Set Aside Memorandum Order of November 10, 2022" (No. 22-244, D.I. 26; No. 22-541, D.I. 19).

## I.   BACKGROUND

Mr. Chong filed these and 17 other patent infringement cases on behalf of Plaintiff Mellaconic IP LLC beginning September 2020.[1]  Andrew Curfman and Howard Wernow were later admitted *pro hac vice* and now also represent Mellaconic in these two cases.  No. 22-244, D.I. 6 (Curfman); No. 22-541, D.I. 7 (Curfman); Tr. of Nov. 4, 2022 Hr'g[2] 102:20–103:2 (Wernow).

---

[1] *See Mellaconic IP LLC v. RideCell, Inc.*, No. 20-1323; *Mellaconic IP LLC v. Frontpoint Sec. Sols., LLC*, No. 21-447; *Mellaconic IP LLC v. Wyze Labs, Inc.*, No. 21-448; *Mellaconic IP LLC v. Cent. Sec. Grp. Nationwide, Inc.*, No. 21-573; *Mellaconic IP LLC v Monitronics Int'l, Inc.*, No. 21-574; *Mellaconic IP LLC v. Canary Connect, Inc.*, No. 21-944; *Mellaconic IP LLC v. Fantasia Trading LLC*, No. 21-945; *Mellaconic IP LLC v. Trane Techs. Co. LLC*, No. 21-1080; *Mellaconic IP LLC v. Linxup, LLC*, No. 21-1081; *Mellaconic IP LLC v. Ezlo Innovation Ltd.*, No. 21-1373; *Mellaconic IP LLC v. Verkada, Inc.*, No. 21-1374; *Mellaconic IP LLC v. Incognia US Inc.*, No. 21-1844; *Mellaconic IP LLC v. Carrier Glob. Corp.*, No. 21-1853; *Mellaconic IP LLC v. Connecteam, Inc.*, No. 22-242; *Mellaconic IP LLC v. PrismHR, Inc.*, No. 22-243; *Mellaconic IP LLC v. Avast Software, Inc.*, No. 22-540; *Mellaconic IP LLC v. Justworks, Inc.*, No. 22-542.

[2] The transcript is docketed at No. 22-244, D.I. 20 and No. 22-541, D.I. 13.

For reasons detailed in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), by early September 2022, I had developed concerns that certain LLC plaintiffs, including Mellaconic, in several patent infringement cases filed by Mr. Chong in this Court, may have had undisclosed financial relationships with the patent monetization firm IP Edge and may not have complied with my April 18, 2022 standing order regarding third-party litigation funding. (I adopt and incorporate here *Nimitz*.) To address those concerns and similar concerns I had about Nimitz (which was not represented by Mr. Chong), I issued on September 12 and 13, 2022 in 12 cases, including these two cases, orders convening a series of evidentiary hearings to determine whether the LLC plaintiffs in the 12 cases had complied with the third-party litigation funding standing order. *Id.* at *11. I also directed the owners of the LLC plaintiffs to attend the hearings in person. *Id.*

On September 2, 2022 and October 5, 2022 respectively, Mellaconic filed in the Deputy Action (No. 22-541) and the TimeClock Action (No. 22-244) a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). No. 22-244, D.I. 18; No. 22-541, D.I. 9.

On November 4, 2022, I convened the first of the scheduled evidentiary hearings—a consolidated proceeding for cases filed by Nimitz, Mellaconic, and Lamplight Licensing LLC. As I explained in detail in *Nimitz*, the evidence

adduced at that hearing raised serious concerns that the parties may have made

inaccurate statements in filings with the Court; that counsel, including Mr. Chong,

may have failed to comply with the Rules of Professional Conduct; that real parties

in interest, such as IP Edge and a related entity called Mavexar, may have been

hidden from the Court and the defendants; and that those real parties in interest

may have perpetrated a fraud on the court by fraudulently conveying the patents

asserted in this Court to a shell LLC and filing fictitious patent assignments with the

United States Patent and Trademark Office (PTO), all designed to shield the real

parties in interest from the potential liability they would otherwise face by

asserting in litigation the patents in question. *Nimitz*, 2022 WL 17338396, at *26.

Believing that I needed more information to decide whether further action

was warranted to address the four concerns I articulated in *Nimitz*, I issued in each

of the Nimitz, Mellaconic, and Lamplight cases on November 10, 2022 a

memorandum order requiring the plaintiffs in these cases to produce certain

records (the November 10 Memorandum Order) no later than December 8, 2022.

No. 22-244, D.I. 22; No. 22-541, D.I. 15; *see Nimitz Techs. LLC v. CNET Media,

Inc.*, No. 21-1247, D.I. 27; *Nimitz Techs. LLC v. BuzzFeed, Inc.*, No. 21-1362,

D.I. 21; *Nimitz Techs. LLC v. Imagine Learning, Inc.*, No. 21-1855, D.I. 22; *Nimitz

Techs. LLC v. Bloomberg L.P.*, No. 22-413, D.I. 18; *Lamplight Licensing LLC v.

ABB Inc.*, No. 22-418, D.I. 24; *Lamplight Licensing LLC v. Ingram Micro, Inc.*,

No. 22-1017, D.I. 17.  That same day, I convened an evidentiary hearing in two cases filed by Backertop Licensing LLC.  As set forth in *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572, D.I. 32,[3] which I adopt and incorporate here, the evidence adduced at that hearing only heightened the concerns that gave rise to the November 10 Memorandum Order.

The categories of documents covered by the November 10 Memorandum Orders in the Nimitz cases and these cases are identical in all material respects.  In each case, the Order requires the production of documents and communications that the nominal owner of the LLC plaintiff and the LLC's lawyers had with Mavexar and certain individuals associated with Mavexar relating to: the formation of the LLC; the LLC's assets; the LLC's retention of its lawyers and law firms; the patents asserted in the LLC's cases in this Court; the LLC's potential scope of liability resulting from the acquisition of those patents; the settlement, potential settlement, and dismissal of the LLC's cases; and the LLC's November evidentiary hearing.  The November 10 Memorandum Order also requires the production of (1) monthly statements for any bank accounts held by the LLC for the period starting with the month before the LLC filed its first lawsuit in this Court through the end of the month following the LLC's last lawsuit; (2) documents relating to

---

[3] The same memorandum opinion is also docketed at *Backertop Licensing LLC v. August Home, Inc.*, No. 22-573, D.I. 34.

the use, purchase, or lease of the suite address for the LLC identified in the complaints filed in the actions; and (3) a sworn declaration of the LLC's nominal owner that identifies the LLC's assets as of the dates the LLC filed its complaints in this Court.

On November 16, 2022, Nimitz filed with the United States Court of Appeals for the Federal Circuit a petition for a writ of mandamus to reverse the November 10 Memorandum Order. *In re Nimitz Techs. LLC*, No. 23-103, D.I. 2-1 at 3 (Fed. Cir. Nov. 16, 2022). On November 17, Mellaconic filed in these cases a motion to stay the November 10 Memorandum Order and all proceedings in these cases "pending a ruling on Nimitz'[s] petition." No. 22-244, D.I. 23 at 1; No. 22-541, D.I. 16 at 1. Later that day, the Federal Circuit stayed Nimitz's November 10 Memorandum Order "pending further action of" that court. No. 23-103, D.I. 5 at 2 (Fed. Cir. Nov. 17, 2022). The next day, I granted Mellaconic's motions and stayed these cases "pending final disposition of the Nimitz Petition." No. 22-244, D.I. 24; No. 22-541, D.I. 17.

On December 8, the Federal Circuit denied Nimitz's petition and lifted the stay in the Nimitz actions. *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *3 (Fed. Cir. Dec. 8, 2022). In doing so, the Court held that the four concerns I had identified as the basis for the November 10 Memorandum Order

> [a]ll . . . relate[] to potential legal issues in the case, subject to the "principle of party presentation," *United*

5

> *States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)
> (discussing the principle and its limits), or to aspects of
> proper practice before the court, over which district
> courts have a range of authority preserved by the Federal
> Rules of Civil Procedure, *see* Fed. R. Civ. P. 83(b);
> *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  The
> district court did not seek information simply in order to
> serve an interest in public awareness, independent of the
> adjudicatory and court-functioning interests reflected in
> the stated concerns.

*Id.* at *2.

Nimitz thereafter filed a combined petition for panel rehearing and rehearing

en banc in the Federal Circuit.  No. 23-103, D.I. 55 (Fed. Cir. Dec. 28, 2022).  On

January 31, 2023, the Federal Circuit denied that petition.  No. 23-103, D.I. 58 at 2

(Fed. Cir. Jan. 31, 2023).  On February 3, Nimitz filed a motion asking the Federal

Circuit "to stay issuing the mandate . . . pending the filing of a petition for

mandamus and/or writ of certiorari in the United States Supreme Court."  No. 23-

103, D.I. 61 at 1 (Fed. Cir. Feb. 3, 2023).  Nimitz argued in its motion that "there

[wa]s . . . good cause for a stay" of the issuance of the mandate because "[i]f the

mandate is not stayed, Nimitz would be required to disclose its privileged

communications."  No. 23-103, D.I. 61 at 2 (Fed. Cir. Feb 3, 2023).  On

February 7, the Federal Circuit issued a written order denying Nimitz's motion to

stay the issuance of the mandate.  No. 23-103, D.I. 62 at 2 (Fed. Cir. Feb. 7, 2023).

## II.   MOTION TO SET ASIDE THE NOVEMBER 10 MEMORANDUM ORDER

On February 17, 2023, Mellaconic filed the pending motion to set aside the

November 10 Memorandum Order.  Mellaconic's primary contention in support of

the motion is that I lack jurisdiction to issue and enforce the Memorandum Order

because Mellaconic voluntarily moved to dismiss the cases and because the

defendants did not present the concerns that I identified as the bases for the

issuance of the Memorandum Order.  This argument is easily dismissed.

"It is well established that a federal court may consider collateral issues after

an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

395 (1990).  The Court offered in *Cooter* this list of "example[s]" of such collateral

issues:

> For example, district courts may award costs after an
> action is dismissed for want of jurisdiction.  *See* 28
> U.S.C. § 1919.  This Court has indicated that motions for
> costs or attorney's fees are "independent proceeding[s]
> supplemental to the original proceeding and not a request
> for a modification of the original decree." *Sprague v.
> Ticonic National Bank*, 307 U.S. 161, 170, 59 S.Ct. 777,
> 781, 83 L.Ed. 1184 (1939).  Thus, even "years after the
> entry of a judgment on the merits" a federal court could
> consider an award of counsel fees. *White v. New
> Hampshire Dept. of Employment Security*, 455 U.S. 445,
> 451, n. 13, 102 S.Ct. 1162, 1166, n. 13, 71 L.Ed.2d 325
> (1982).  A criminal contempt charge is likewise "'a
> separate and independent proceeding at law'" that is not
> part of the original action. *Bray v. United States*, 423
> U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975),
> quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S.

> 418, 445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911).  A
> court may make an adjudication of contempt and impose
> a contempt sanction even after the action in which the
> contempt arose has been terminated.  *See United States v.*
> *Mine Workers*, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91
> L.Ed. 884 (1947) ("Violations of an order are punishable
> as criminal contempt even though . . . the basic action has
> become moot"); *Gompers v. Buck's Stove & Range Co.*,
> *supra*, 221 U.S., at 451, 31 S.Ct., at 502 (when main case
> was settled, action became moot, "of course without
> prejudice to the power and right of the court to punish for
> contempt by proper proceedings").

*Id.* at 395–96 (alterations in the original).

The Court specifically held in *Cooter* that a voluntary dismissal under Rule 41(a)(1) does not deprive a district court of jurisdiction over a Rule 11 motion. *Id.* at 398.  But as the Third Circuit (whose law governs this Court's exercise of its inherent powers) recognized in *Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014), there is no "principled reason why the Court's decision [in *Cooter*] would not apply equally to sanctions imposed pursuant to a district court's inherent authority."

What I said *Nimitz* bears repeating here:

> "It has long been understood that '[c]ertain implied
> powers must necessarily result to our Courts of justice
> from the nature of their institution,' powers 'which
> cannot be dispensed with in a Court, because they are
> necessary to the exercise of all others.'"  *Chambers v.*
> *NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United*
> *States v. Hudson*, 11 U.S. 32, 34 (1812)).  "These powers
> are 'governed not by rule or statute but by the control
> necessarily vested in courts to manage their own affairs

8

so as to achieve the orderly and expeditious disposition
of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S.
626, 630–31 (1962)).

The Supreme Court has expressly held that a federal
court's inherent powers include the powers I have
exercised here: "the power to control admission to its bar
and to discipline attorneys who appear before it," *id.*, the
power to enforce compliance with court orders, *see id.*,
and "the power to conduct an independent investigation
in order to determine whether [the court] has been the
victim of fraud." *Id.* at 44.  These powers extend to
nonparties.  *See Manez v. Bridgestone Firestone N. Am.
Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter
who allegedly commits a fraud on the court—a party, an
attorney, or a nonparty witness—the court has the
inherent power to conduct proceedings to investigate that
allegation and, if it is proven, to punish that conduct.");
*Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th
Cir. 1994) ("[E]ven in the absence of statutory authority,
a court may impose attorney's fees against a nonparty as
an exercise of the court's inherent power to impose
sanctions to curb abusive litigation practices." (citations
omitted)).

*Nimitz*, 2022 WL 17338396, at *26–27 (alterations in the original).

It makes no sense that a party could deprive a court of its inherent powers

simply by filing a notice of dismissal.  *Haviland*, 561 F. App'x at 150.  To hold

otherwise would render district courts impotent to manage their cases in an orderly

fashion and would foster abuse of our judicial system by unethical litigants and

their attorneys.

For these same reasons, it is also not necessary that a party—as opposed to

the court—raise the concerns that necessitate the exercise of the court's inherent

powers.  As the Supreme Court held in the seminal case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), "it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants."

In sum, I neither lacked jurisdiction to issue the November 10 Memorandum Order nor lack jurisdiction to enforce it now.

Mellaconic next argues that the categories of information sought by the November 10 Memorandum Order are "overly broad" because they "necessarily include communications and correspondence relating to other Mellaconic cases and lawsuits that were not filed in the District of Delaware."  No. 22-244, D.I. 27 at 12; No. 22-541, D.I. 20 at 12.  But the fact that a category of documents relevant to the concerns raised in these cases happens also to touch on issues in other cases does not render the demand to produce that category of documents overly broad. Mellaconic also faults the Memorandum Order for "repeat[ing] three times" the categories of communications and documents it directs Mellaconic to produce. No. 22-244, D.I. 27 at 12; No. 22-541, D.I. 20 at 12.  The repetition, however, is intentional—and necessary—as it ensures that the relevant documents and communications of (1) Mr. Bui (Mellaconic's nominal owner, *see Nimitz*, 2022 WL 17338396, at \*9, \*19–26), (2) Mr. Chong and his firm, and (3) Messrs. Curfman and Wernow and their firm are produced.  Mellaconic also argues that the

10

Memorandum Order's requirement that Mellaconic produce monthly bank account statements for the period between February 1, 2022 and May 31, 2022 is overly broad because "any financial activity in any account owned by Mellaconic during that time frame would be included in the scope of production, and would reasonably include transactions wholly unrelated to these two cases." No. 22-244, D.I. 27 at 12; No. 22-541, D.I. 20 at 12.  The information sought, however, is relevant to ascertaining whether Mellaconic was a purposefully empty vessel that was fraudulently formed to insulate Mavexar and its principals and/or Mr. Bui from liability they could otherwise face by accusing others of infringing the asserted patents.

Finally, Mellaconic argues that the November 10 Memorandum Order should be set aside because it "is geared towards disclosing" attorney-client privileged communications and attorney work product.  No. 22-244, D.I. 27 at 13; No. 22-541, D.I. 20 at 13.  Mellaconic, however, cites, and I know of, no case that precludes a court from requiring a party to produce *to the court* materials that the party claims are privileged or covered by the work-product doctrine.  There is also good reason to doubt Mellaconic's privilege and work-product assertions.  The premise of those assertions is that Mavexar is an agent of Mellaconic.  *See* No. 22-244, D.I. 27 at 13–14; No. 22-541, D.I. 20 at 13–14.  But the evidence adduced to date suggests that Mr. Bui and Mellaconic are doing Mavexar's bidding, *see*

11

*Nimitz*, 2022 WL 17338396, at *9, *19–26; not the other way around. The "principal" here appears to be Mavexar; not Mellaconic or Mr. Bui. Moreover, as Mellaconic concedes, "[d]ocuments may also be submitted to a court to determine whether they may be subject to the crime/fraud exception" to the privilege and attorney work product doctrines. No. 22-244, D.I. 27 at 15; No. 22-541, D.I. 20 at 15. Although I am far from making any definitive conclusions here, it is abundantly clear that there is evidence to suggest that Mavexar and its principals may have used Mellaconic and Mr. Bui, along with other LLC plaintiffs and their nominal owners, to perpetrate a fraud on this Court, the PTO, and numerous defendants.

For these reasons, I will deny Mellaconic's motion to set aside the November 10 Memorandum Order. And I will order Mellaconic to comply with the November 10 Memorandum Order no later than May 10, 2023.

## III.   CONCLUSION

The Court will issue an Order consistent with this Memorandum Opinion.